NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANCESCO PISERCHIA, : | |
| : | Civil Action No. 12-2520 (CCC) |
| Plaintiff, : | |
| : | |
| v. : | OPINION AND ORDER |
| : | |
| BERGEN COUNTY POLICE DEPT., et al., : | |
| : | |
| Defendants. : | |

**CLARK, Magistrate Judge**

Currently pending before the Court is Plaintiff Francesco Piserchia's ("Piserchia" or "Plaintiff") motion for leave to file and serve a second amended complaint. [Docket Entry Nos. 79, 86]. Defendants Bergen County Police Department ("BCPD"), Police Chief Brian Higgins ("Police Chief Higgins"), Captain Uwe Malakas ("Captain Malaka"), Officer Saheed Baksh ("Officer Baksh"), and Officer Jeffrey Roberts ("Officer Roberts") (collectively referred to as "Defendants") oppose Plaintiff's motion. [Docket Entry Nos. 80, 81, 82].

Also pending before the Court is Plaintiff's application for the mental health treatment records and/or HIPAA release forms for Officer Baksh. [Docket Entry Nos. 100, 103]. Officer Baksh opposes Plaintiff's application. [Docket Entry Nos. 101, 104]

The Court has fully reviewed and considered all arguments made in support of, and in opposition to, Plaintiff's motion and application. The Court considers each motion and application without oral argument pursuant to L. Civ. R. 78.1(b). For the reasons set forth more fully below, Plaintiff's motion for leave to file and serve a second amended complaint is DENIED.

1

Additionally, Plaintiff's application for the mental health treatment records and/or HIPAA release forms for Officer Baksh is GRANTED.

## I. BACKGROUND

By way of background, this actions arises from an incident occurring on August 12, 2010 during which Plaintiff was involved in a vehicle pursuit with various police departments in northern New Jersey. [Docket Entry No. 27]. At the end of the pursuit, Plaintiff claims that shots were fired at him by Officer Baksh. [*Id.*] Although those shots missed, Plaintiff states that he was subsequently abused and injured by the Officers at the scene. [*Id.*] Based on these events, Plaintiff commenced this action on April 27, 2012 by the filing of his Complaint. [Docket Entry No. 1]. On April 30, 2014, Plaintiff filed his Amended Complaint alleging ten causes of action including unlawful use of force, civil conspiracy, deprivation of Plaintiff's access to the courts, and failure to intervene to prevent misconduct. [Docket Entry No. 27]. On August 11, 2014, the Court entered a Pretrial Scheduling Order directing the parties to file motions for leave to amend the pleadings and/or to add new parties no later than December 12, 2014. [Docket Entry No. 47].

Thereafter, on December 9, 2014, Plaintiff entered guilty pleas to charges arising from the August 12, 2010 incident, agreeing to a maximum sentence of ten years. [Docket Entry No. 79]. At that time, Plaintiff was already incarcerated on an unrelated charge and sought to have his prior sentence run concurrently with his sentence for the August 12, 2010 incident. [Docket Entry No. 79]. However, the Bergen County Prosecutor's Office, represented by Danielle Grootenboer, Esq. ("Grootenboer"), insisted that the two sentences run consecutively. [Docket Entry No. 82-2]. Plaintiff claims that when the parties could not reach an agreement, the judge assigned to the matter held an "off-the-record" conference on January 30, 2015.[1] [Docket Entry No. 79]. Plaintiff claims

---

[1] In his Affidavit, Grootenboer denies that an "off-the-record" conference took place, presenting e-mails indicating Plaintiff's sentencing occurred on February 20, 2015.

that during this conference, the Judge advised Plaintiff's defense counsel that Plaintiff would be sentenced to concurrent terms only if Plaintiff agreed to dismiss the above-captioned action. [*See id.*] Plaintiff further claims that Grootenbooer witnessed the judge's offer and did not object. [*See id.*] Plaintiff refused to accept the judge's proposal and was sentenced to consecutive terms on January 30, 2015.[2] [*See id.*]

Plaintiff states that he notified Defendants of these events on September 15, 2015 by supplementing his prior disclosures. [Docket Entry No. 79]. Plaintiff further claims that he discussed his intention to file a Second Amended Complaint with the Court on October 26, 2015 but refrained from doing so based on the Court's October 26, 2015 directive requiring the parties to exchange settlement positions. [Docket Entry No. 74, 79]. When it became apparent that settlement discussions had hit a standstill, Plaintiff filed his motion for leave to file a second amended complaint on January 4, 2016. [Docket Entry No. 79].

Thereafter, Plaintiff engaged in a discovery dispute with Officer Baksh related to Officer Baksh's mental health treatment records. [Docket Entry No. 100]. Plaintiff initially requested Officer Baksh's medical records on September 29, 2015. [*See id.*] Officer Baksh responded to these requests in January 2016, without objection, but did not produce any of the requested mental health records, positing that these documents were privileged. [*See id.*] On May 24, 2016, the Court ordered the parties to submit letters substantively addressing this issue, which were subsequently filed. [Docket Entry Nos. 103, 104].

---

[2] Again, Grootenboer disputes the date of sentencing, claiming that Plaintiff's sentencing was adjourned from January 30, 2015 to February 20, 2015. [Docket Entry No. 82-2].

## **DISCUSSION**

I. **Plaintiff's Motion for Leave to File a Second Amended Complaint**

*A. Legal Standard*

The decision to grant or deny leave to amend is committed to the sound discretion of the Court. *Gay v. Petsock,* 917 F.2d 768, 772 (3d Cir. 1990). The threshold issue in resolving a motion to amend is the determination of whether the motion is first governed by Rule 16 of the Federal Rules of Civil Procedure." *Watson v. Sunrise Senior Living Servs., Inc.*, No. CIV.A. 10-230 (KM), 2015 WL 1268190 at *1 (D.N.J. Mar. 18, 2015) (citing *Karlo v. Pittsburgh Glass Works*, LLC, No. 10–1283(NBF), 2011 WL 5170445, at *2 (W.D.Pa. Oct. 31, 2011)). Unlike the "more lenient" standard applied under Rule 15, Rule 16 applies a stricter standard. *Watson*, 2015 WL 1268190 at *5. "Rule 16... requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order." *Karlo*, 2011 WL 5170445 at *2 (citing Fed.R.Civ.P. 16(b)(4)). "Only once the party has shown sufficient 'good cause' to amend the Rule 16 Order to extend the motion to amend deadline will the court evaluate the proposed amendment under Rule 15(a). If the moving party is unable to demonstrate 'good cause', the Court will deny the motion and will not proceed to a Rule 15 analysis." *Korrow v. Aaron's, Inc.*, No. 10-cv-6317 (MAS)(LHG), 2014 U.S. Dist. LEXIS 90777 at *16 (D.N.J. 2014).

While there sometimes might be "tension" between the standards of the two Rules, *Karlo*, 2011 WL 5170445 at *2 n. 3, Third Circuit courts "have consistently reached the same conclusion: a party seeking to amend the pleadings after the deadline set by the Court must satisfy the requirements of Rule 16(b)(4)—i.e., that party must show 'good cause.'" *Id.* at *2; *see also Dimensional Commc'n, Inc. v. OZ Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir.2005) (instructing that the Third Circuit has adopted a good cause standard when determining the propriety of a motion to amend after the deadline has elapsed).

To demonstrate good cause under Rule 16, the moving party must show "due diligence." *See Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d. Cir. 2010). Typically, when analyzing the moving party's diligence, courts consider whether the movant "possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." *Smith v. Honeywell Int'l, Inc.*, No. 10–CV–03345 (ES/JAD), 2014 WL 301031 at *6 (D.N.J. Jan. 27, 2014) (citations omitted). Further, "good cause may be satisfied if the movant shows that the delay in filing the motion to amend stemmed from 'any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order.'" *Phillips v. Grebon*, No. 04–5590(GEB), 2006 WL 3069475 at *6 (D.N.J. Oct. 27, 2006) (citation omitted). Moreover, if a movant knew about the need to file a motion to amend before the deadline expired, or if the movant did not satisfactorily explain the delay, the court may deny the motion. *See, e.g., Dimensional Commc'n., Inc. v. OZ Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir.2005).

If the movant satisfies Rule 16, he must then satisfy Rule 15. Pursuant to FED. R. CIV. P. 15(a)(2), leave to amend the pleadings is generally granted freely. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

Delay alone is insufficient to deny a request for leave to amend, *see Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d. Cir. 1984), but the moving party "must demonstrate that its delay in seeking to amend is satisfactorily explained." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotations omitted). Courts will deny a request for leave to amend where delay becomes undue, such as when its accommodation creates an "unwarranted burden on the court…[and] unfair burden on the opposing party." *Adams v. Gould*, 739 F.2d 858 at 868.

Prejudice will be considered "undue" when it rises to such a level that the non-moving party would be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence…" *Harrison*, 113 F.R.D. at 468 (internal quotations omitted). In evaluating the extent of any alleged prejudice, the court looks to the hardship on the non-moving party if the amendment were granted. *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001). "Specifically, [courts] have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or theories." *Cureton*, 252 F.3d at 273. The court of appeals has stated that "prejudice to the non-moving party is the touchstone for the denial of…amendment." *See Cornell & Co. v. Occupational Safety and Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978); *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989).

B. Analysis

i. Rule 16

The August 11, 2014 Pretrial Scheduling Order provided the parties until December 12, 2014 to amend the pleadings. [Docket Entry No. 47]. Since Plaintiff filed his motion to amend after this deadline, the Court must first assess whether good cause exists under Rule 16 to modify the Pretrial Scheduling Order.

Plaintiff's amendments to the operative complaint are twofold: (1) amendments seeking to add parties and claims based on the events purportedly taking place on January 30, 2015 and (2) amendments seeking to add facts related to the August 12, 2010 arrest. [Docket Entry No. 79-6]. With regards to the amendments based on the January 30, 2015 "off-the-record conference," good cause exists because there is no evidence that Plaintiff "possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." *Smith*, 2014 WL 301031 at *6 (citations omitted). Here, Plaintiff could not have amended his First Amended Complaint to include these parties or claims prior to December 12, 2014 because the events at issue allegedly occurred on January 30, 2015. As such, good cause exists for modifying the Pretrial Scheduling Order as to these amendments.

On the other hand, the factual amendments related to the August 12, 2010 vehicle pursuit and arrest fail to meet the good cause standard. The factual amendments proposed by Plaintiff relate to events that occurred more than five years prior to Plaintiff's motion for leave. Plaintiff provides no showing of due diligence for why these facts could not have been learned prior to Plaintiff's deadline to file his motion to amend the pleadings. The only explanation proffered by Plaintiff for this delay is that these facts were "learned in discovery." But Plaintiff fails to identify when or where these facts were learned, and has failed to show any mistake, excusable neglect or any other factor which might understandably account for his failure to comply with the Scheduling Order. As such, Plaintiff has failed to establish good cause for these factual amendments.

  ii. Rule 15

Since good cause exists under Rule 16 to modify the pretrial scheduling order—for the events taking place on January 30, 2015—this Court must next assess whether leave to amend should be given under Rule 15.

7

Here, the Court finds that these amendments would unduly prejudice the parties. More than four years after instituting this action, Plaintiff now seeks to add parties and claims based on an entirely unrelated event involving a new theory of liability. Plaintiff's amendments involve different parties, elements, and facts than the original claims which would place additional expense, delay, and undue burden on Defendants. *See Williams v. Cost-U-Less, Inc.*, No. 2011-025, 2014 U.S. Dist. LEXIS 90849, at *19 (D.V.I. July 3, 2014) (finding undue prejudice where the Plaintiff sought to amend his complaint to add an entirely new theory of liability). Moreover, the additional discovery required to defend against these amendments would "significantly delay the resolution of the dispute." *See Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (holding that undue prejudice exists where the proposed amendments would significantly delay the resolution of the action). Defendants, who have no tangential involvement with the events of January 30, 2015, would be required to endure protracted discovery on these claims expending additional resources simply to sit on the sidelines. Accordingly, Plaintiff's motion for leave to amend is denied.

## II. Plaintiff's Application to Compel the Production of Officer Baksh's Mental Health Treatment Records

### A. *Legal Standard*

Federal Rule of Civil Procedure 26 governs the scope of discovery in federal litigation and provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

8

Fed. R. Civ. P. 26(b)(1). Rule 26 is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage. *Tele–Radio Sys. Ltd. v. De Forest Elecs., Inc.,* 92 F.R.D. 371, 375 (D.N.J. 1981). While relevant information need not be admissible at trial in order to grant disclosure, the burden remains on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000). Upon a finding of good cause, a court may order discovery of any matter relevant to a party's claims, defenses or the subject matter involved in the action. "Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.,* 173 F.3d 188, 191 (3d Cir. 1999). Discovery requests may be curtailed to protect a person from whom discovery is sought from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

### B. Analysis

Plaintiff seeks production of Officer Baksh's mental health records to support his claim for civil conspiracy. Specifically, Plaintiff asserts that Officer Baksh and the individual co-defendants conspired to conceal Officer Baksh's discharge of his service weapon by not informing their on-scene supervisor. When questioned about this at deposition, Officer Baksh claimed that "it was all kind of hazy and weird like dream," that he was "'hot', light-headed and had ringing in his ears." [*See* Docket Entry No. 103]. Officer Baksh also stated that he was ultimately sent to the hospital by another supervisor when things became "fuzzy." [*See id.*]

Plaintiff argues that he is entitled to the mental health records for two reasons. First, Officer Baksh waived the psychotherapist-patient privilege by placing his mental health at issue in this case. And second, even if Officer Baksh did not place his mental health at issue, he waived his

9

objections to Plaintiff's discovery requests by failing to object to these requests in the normal course of discovery.

In response, Officer Baksh argues that he did not waive the psychotherapist-patient privilege because he did not put his mental health at issue. Specifically, Officer Baksh argues that he has not pled a claim for damages for emotional distress or psychological issues, and he did not assert an affirmative defense predicated on his mental health. [*See* Docket Entry No. 104]. Officer Baksh also argues that he did not waive his objections to Plaintiff's discovery requests because his counsel emailed Plaintiff's counsel on December 23, 2015, advising him that he could not determine whether the documents were privileged until he could confirm their existence. [*See id.*]

Typically, communications between a psychotherapist and a patient in the course of diagnosis or treatment are privileged and protected from compelled disclosure under Federal Rule of Evidence 501. *See Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). The United States Supreme Court in *Jaffe* expressly recognized a federal privilege for such communications, affirming that "like the spousal and attorney-client privileges, the psychotherapist-patient privilege is 'rooted in the imperative need for confidence and trust.'" *Id.* at 10, 15. Nevertheless, "the patient may of course waive the protection." *Id.* at 15 n.14. Courts in this district have taken the "broad view" of waiver—finding waiver where the party has placed their mental or emotional condition at issue. *Jackson v. Chubb Corp.*, 193 F.R.D. 216, 224 (D.N.J. 2000).

While there are very few cases involving waiver by a defendant, those that exist shed light on the issue. In *Speaker v. County of San Bernardino*, 82 F. Supp. 2d 1105, 1118 (C.D. Cal. 2000), the defendant, an officer, sought to prevent discovery of his communications with his psychotherapist—mandated by the sherriff's department—after the defendant shot and killed an individual. *See id.* at 1107. During his deposition, the officer testified that his perception of the

incident was distorted. *See id.* The defendant later submitted the report of an expert that the distortion resulted from the trauma of the incident. *See id.* The court found that the defendant waived the psycho-therapist patient privilege by asserting "perception distortion as a possible defense *both* by testifying to his distorted perception in his deposition and by submitting the report of an expert witness on his perception distortion." *See id*. at 1120; *but see Jones v. City of Oakland*, No. C 12-1416 MEJ, 2013 U.S. Dist. LEXIS 113512 at *4 (N.D. Cal. Aug. 12, 2013) (finding that no waiver occurred during the officer defendant's deposition where the defendant's mental condition was not tied directly to the incident) (emphasis added).

      Just as in *Speaker*, Defendant, when asked about why he did not report the shooting to his superior officer, complained that "it was all just kind of hazy and weird like a dream."— essentially claiming that his non-disclosure was due to his distorted perception. Unlike in *Jones*, Officer Baksh directly connected his non-disclosure to his mental condition after the incident. By doing so, Officer Baksh has waived the psychotherapist patient privilege as to his distorted perception after the alleged shooting. Accordingly, those records that relate to Officer Baksh's distorted perception after the alleged shooting are to be produced to Plaintiff pursuant to the Court's October 1, 2014 Discovery Confidentiality Order ("DCO"), using the appropriate confidentiality designations as provided by the DCO.

## II.  CONCLUSION

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 22nd day of August, 2016,

**ORDERED** that Plaintiff's Motion for Leave to Amend its Answer is **DENIED**; and it is further

**ORDERED** that Plaintiff's Application to Compel the Production of Officer Baksh's Mental Health Records is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court terminate the aforementioned motion [Docket Entry No. 79] accordingly.

s/James B. Clark, III
**HONORABLE JAMES B. CLARK, III**
**UNITED STATES MAGISTRATE JUDGE**